## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **MEDARC, LLC, as Collection Agent for** | § | |
| **Jeffrey H. Mims, Trustee of the Liquidating** | § | |
| **Trust of Revolution Monitoring, LLC,** | § | |
| **Revolution Monitoring Management, LLC,** | § | |
| **and Revolution Neuromonitoring, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:20-CV-3281-N-BH** |
| | § | |
| **MERITAIN HEALTH, INC.,** | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge[1]** |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court is *Defendant Meritain Health, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support*, filed June 23, 2021 (doc. 20). Based upon the relevant filings and applicable law, the motion should be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

On September 25, 2020, MedARC, LLC, as Collection Agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (Plaintiff), sued Meritain Health, Inc. (Defendant) in state court, to recover payments for out-of-network medical services rendered to patients covered by health insurance plans governed by the Employee Retirement Income Security Act of 1974 (ERISA). (*See* doc. 1 at 18-33.)[2] Defendant removed the lawsuit to federal court on grounds of diversity jurisdiction and federal question jurisdiction on October 30, 2020. (*See id.* at 1-6.)

---

[1]By order of reference dated January 28, 2021 (doc. 7), this case has been referred for pretrial management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

A.    **Medical Services**

Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (collectively Revolution) were medical providers of intraoperative neurophysiological monitoring (IONM) medical services for operations around delicate parts of the nervous system. (doc. 17 at 4.) IONM technology provides "real-time" monitoring of the nervous system during surgery, which alerts surgeons of potential evolving neurologic injury to allow for corrective action to avoid permanent injury or death. (*Id.* at 4-5.)  These medical services are primarily utilized in spinal, cranial, facial, throat, and peripheral surgeries. (*Id.*)

From between June 2014 and July 2016, Revolution provided IONM medical services to four patients covered by separate employer-sponsored health plans governed by ERISA (Insureds). (docs. 17 at 6.) The plans are self-insured, which means an employer acts as the insurer and assumes financial responsibility for payment of medical claims, and are administered in accordance with ERISA by a plan administrator with "discretionary authority over the management of the plans, the disposition of the plan assets, and the adjudication of claims." (*Id.*) Under the terms of the plans, the plan administrator is obligated to pay in accordance with the participant's or beneficiary's rights to receive reimbursement for out-of-network care, and they establish an allowable amount to be paid for medical services provided by out-of-network providers like Revolution. (*Id.* at 9.) As an out-of-network provider, Revolution did not have pre-determined rates under the plans. (*Id.* at 5.) Defendant was retained by the plan administrator for each plan to provide third-party administrative services, including "certain claims processing and other ministerial services." (docs. 21-2 at 1-2; 21-3 at 3-4; 21-4 at 3-4; 21-5 at 4-5.)

Revolution generally followed the same process before it provided out-of-network medical

services to Insureds. (doc. 17 at 7.)  It received orders from physicians to schedule its IONM medical services in connection with Insureds' medical procedures to be performed at physicians' surgical facilities. (*Id.*)  After receiving orders and before rendering medical services, Revolution obtained verification from Defendant that "each patient was covered by a health benefit plan that provided out-of-network benefits," that "the particular procedures were covered by the relevant health benefit plan," and that it "would be paid in accordance with the health benefit plan." (*Id.* at 8.)[3]  During the verification process, Defendant did not identify or rely on any exclusions, conditions, or other prerequisites within the relevant health benefit plans, including any anti-assignment provisions. (*Id.*)  Plaintiff alleges that "Revolution would not have provided these services to these patients without first obtaining this verification from Defendant." (*Id.*)

After medical services were performed, Plaintiff or Revolution submitted claims for payment through Defendant's designated claims-handling channels, but the claims were either denied or drastically underpaid. (*Id.* at 9.)  Appeals of the non-payment or underpayment of the claims via Defendant's designated appeals channels were also denied. (*Id.*)  "Defendant failed to provide a specific reason or reasons for the adverse determination, failed to reference the specific plan provisions on which the determination was based, failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans, including but not limited to any anti-assignment provisions, and failed to identify and provide a copy of the internal rule, guideline, protocol or other similar criterion that was relied upon in making the adverse

---

[3]"As a matter of policy," each Insured also executed an "assignment of benefits" form (AOB), assigning to Revolution, in relevant part, "(1) the rights and interest to collect and be reimbursed for the medical service(s) performed for the patient; (2) the rights and interest to obtain plan documents and other related documentation and information by both provider and its attorney; (3) the rights and interest to any legal or administrative claims and causes of action; (4) the right to bring legal action, if needed, against the insurer or health benefits plan to recover costs or enforce coverage; and (5) the reasonable assistance of the patient in pursuing third-party payments." (*Id.*)

determination." (*Id.*) The amounts Defendant paid for the medical services Revolution rendered to Insureds "were drastically lower than any other recognizable third-party commercial or government payor in the health insurance industry." (*Id.* at 10.)

## B.  **Bankruptcy**

Between September 27 and October 5, 2018, Revolution filed for Chapter 11 bankruptcy in the Northern District of Texas. (doc. 17 at 15-16.) On July 23, 2019, the bankruptcy court entered an order confirming the Debtors' Second Joint Plan of Reorganization (Bankruptcy Plan), which among other things, provided for the creation of a Liquidating Trust, the appointment of Jeffrey H. Mims as Liquidating Trustee, and the appointment of Plaintiff to serve as Collection Agent. (*Id.* at 16.)  On August 5, 2019, the Liquidating Trust Agreement (LTA) was filed in accordance with the Bankruptcy Plan.  *See In re Revolution Monitoring, LLC, et al.*, No. 18-33730-hdh-11 (N.D. Tex. Bank.) (Revolution Bankr., doc. 146).

Under the Bankruptcy Plan, "all assets of the Debtors, including all cash, accounts receivable, patient medical records, billing records, banking records, billing ID's, billing numbers, medicare ID's, software licenses, passwords, and any other documents, licensure, or information that Debtors have previously used and relied upon, or that is necessary to effect the billing and collection of the Accounts Receivable, shall be transferred, granted, assigned, conveyed, set over, and delivered to the Liquidating Trust . . . ." (*Id.*, doc. 139 at 16.)  As Collection Agent, Plaintiff had "full authority regarding the Accounts Receivable to: (i) bill, rebill, and collect the Medical Receivables; (ii) bring lawsuits and settle lawsuits; (iii) negotiate, bring, enforce and settle claims, together with all lawful actions necessary for collection thereof; (iv) enter into collection agreements with third-party collection agencies; (v) enter into engagement agreements with law firms to

commence legal adjudication of collections, on behalf of the Debtors and the Liquidating Trustee." (*Id.* at 17-18.)  The net proceeds collected were to be used to pay creditors. (*Id.* at 18.)

## C.    <u>Claims for Benefits</u>

Plaintiff's first amended complaint asserts claims for benefits under ERISA, Sections 502(a)(1)(B) and 502(a)(3), for breach of fiduciary duties of loyalty and care under ERISA, Section 502(a)(2), and for attorneys' fees under ERISA, Section 502(g)(1), as well as state law claims for breach of contract and for promissory estoppel. (doc. 17 at 16-24.) It alleges that Defendant was the "claim administrator" and the "*de facto* plan administrator for each and every claim at issue in this lawsuit," and it functioned as a fiduciary as defined under ERISA. (*Id.* at 6, 12-13.)  It also alleges that the IONM medical services Revolution provided to Insureds "were medically appropriate and necessary, covered by the applicable plan terms, and the claims should have been paid to Revolution as the Insureds' lawful assignee," but Defendant "indiscriminately denied payment for most claims and services based on an unsupported and erroneous assertions" and its "treatment of Revolution's appeals of adverse benefits determinations was contrary to ERISA, applicable regulations, and the terms of applicable health benefit plans." (*Id.* at 15.) Plaintiff asserts that it has standing to pursue the ERISA and breach of contract claims because Revolution received valid assignments of all the benefits provided to Insureds under the plans, which were subsequently assigned to it.  (*Id.* at 16-17, 19, 22.) It also asserts a cause of action for promissory estoppel "on behalf of the Liquidating Trustee of Revolution's estate, separate and apart from any assignment of benefits." (*Id.* at 23.)

One of the unpaid claims for which Plaintiff seeks payment relates to medical services Revolution provided on July 19, 2016, to an Insured covered by a self-funded benefit plan sponsored by Furniture Row Companies (Furniture Row Plan), for which Defendant continues to provide third-

party administrative services. (docs. 21-2 at 2; 21-3.)  Two claims relate to services provided on

June 18, 2014 and July 24, 2015, to Insureds covered by a self-funded benefit plan sponsored by

Texas Health MedSynergies, LLC (Texas Health Plan), for which Defendant ceased providing

administrative services on December 31, 2016. (docs. 21-2 at 2; 21-4; 21-6 at 2.) The remaining

claim relates to services provided on February 25, 2015, to an Insured covered by a self-funded

benefit plan sponsored by Patterson Auto Center (Patterson Auto Plan), for which Defendant also

no longer provides administrative services as of March 31, 2016. (docs. 21-2 at 2; 21-5; 21-6 at 2.)

On June 23, 2021, Defendant moved to dismiss Plaintiff's first amended complaint under

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (doc. 20.)  Plaintiff responded

on July 14, 2021, and Defendant replied on July 28, 2021. (docs. 23, 24.)

## II.  RULE 12(b)(1)

Defendant challenges Plaintiff's standing to assert some of its causes of action under Rule

12(b)(1) of the Federal Rules of Civil Procedure. (doc. 20 at 11-18.)

## A.    <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter

jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without

jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They

"must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal

jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912,

916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any

6

stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.* Facial attacks are usually made early in the proceedings. *Id.*

If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. "To defeat a factual attack, a plaintiff must prove the

existence of subject-matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citation and quotations omitted). A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, in support of its motion to dismiss, Defendant provides the affidavit of its counsel, the declarations of its employees, and plan document excerpts of the applicable health plans. (*See* doc. 21.) Plaintiff provides copies of the AOBs executed by Insureds and a copy of the Bankruptcy Plan in its response to the motion. (*See* doc. 23-1.) Defendant's motion therefore represents a factual attack, and no presumption of truth attaches to Plaintiff's factual allegations. Because neither party contests the proffered evidence, there are no disputed facts to resolve.

## B.    Standing

Defendant argues that Plaintiff lacks constitutional and statutory standing to assert certain ERISA claims. (doc. 20 at 11-18.)

"The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication." *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 517-18 (1975). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498. "The inquiry has two components: constitutional limits,[4] based on the case-and-controversy clause in

---

[4]"To meet the [Article III] constitutional standing requirement, a plaintiff must show (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009) (quoting *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001)) (alteration in *St. Paul Fire & Marine Ins. Co.*).

Article III of the Constitution; and prudential limits,[5] crafted by the courts." *Id.* (citing *Raines v. Byrd*, 521 U.S. 811, 820 (1997)).

### 1.    *Constitutional Standing*

Defendant argues that because it no longer provides any administrative services for the Texas Health Plan and the Patterson Auto Plan, Plaintiff is unable to assert redressable claims for relief under ERISA that are based on those plans against it. (doc. 20 at 17-18.)[6]

To satisfy the prerequisites of constitutional or Article III standing, "[the] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements[, and when] a case is at the pleading stage, the plaintiff must 'clearly... allege facts demonstrating' each element." *Id.* (citations omitted); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998) ("The triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence."). While "'at the pleading stage, general factual allegations of injury

---

[5]Prudential standing relates to whether: (1) a plaintiff's grievance falls within the zone of interests protected by the statute invoked, (2) the complaint raises a generalized grievance more properly addressed by the legislature, and (3) the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties. *St. Paul Fire & Marine Ins. Co.*, 579 F.3d at 539; *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).

[6]Although Defendant first argues that Plaintiff lacks standing because certain claims are barred by an anti-assignment provision or are not expressly assigned to Revolution, as more fully discussed below, those arguments implicate statutory or prudential standing. Because "Article III standing must be decided prior to the prudential standing ... issue[ ]," *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 333 (5th Cir. 2002), whether Plaintiff has Article III constitutional standing must be considered first. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91-101 (1998) (rejecting the practice of assuming constitutional standing and proceeding directly to the merits).

resulting from the defendant's conduct may suffice' to establish standing," *Stallworth v. Bryant*, 936 F.3d 224, 230 (5th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560), "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing," *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990). "[I]f the plaintiff does not carry his burden clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute, then dismissal for lack of standing is appropriate." *Hotze v. Burwell*, 784 F.3d 984, 993 (5th Cir. 2015) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

As discussed, one of the elements of constitutional standing that a plaintiff must establish is redressability. *See Lujan*, 504 U.S. at 560-61. To demonstrate redressability, a plaintiff must show that "it is *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision." *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)) (emphasis original).

"ERISA section 502(a)(1)(B) empowers a plan participant to sue 'to recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the plan.'" *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 194 (5th Cir. 2015) (quoting 29 U.S.C. § 1132(a)(1)(B)). "Under § 502(a)(3), a plan participant may bring an action '(A) to enjoin any act or practice which violates any provision of [ERISA's protection of employee benefit rights] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA's protection of employee benefit rights] or the terms of the plan.'" *Matassarin v. Lynch*, 174 F.3d 549, 566 (5th Cir. 1999) (quoting 29 U.S.C. § 1132(a)(3)) (alterations in *Matassarin*).

Generally, "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 845 (5th Cir. 2013) (citation omitted).  A party that no longer has control or discretion over an ERISA plan is not a proper defendant because it is incapable of providing a plaintiff relief for ERISA benefits. *See, e.g., Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Texas, Inc.*, 16 F. Supp.3d 767, 778 (S.D. Tex. 2014) (citation omitted) ("To the extent that Humana does not control administration of a plan at issue in this case and thus did not 'exercise [ ] actual control over the denial,' it is not a proper defendant.").

In *Hall v. LHACO, Inc.*,140 F.3d 1190, 1196 (8th Cir. 1998), the Eighth Circuit found that an ERISA plan participant did not have standing to pursue claims under Sections 502(a)(1)(B) and 502(a)(3) against a former plan administrator with no present control or discretion over the plan because his claims were not "redressable."  It reasoned that effective relief could be had only against the plan itself or the current administrator, as the former plan administrator was incapable of paying out plan benefits, enforcing rights under the plan, or clarifying rights to future benefits under the terms of the plan. *Id.*  The Fifth Circuit Court of Appeals does not appear to have addressed this issue, and *Hall* has been followed or favorably cited by district courts in this circuit. *See Franklin v. AT & T Corp.*, No. 3:08-CV-1031-M, 2010 WL 669762, at *2 (N.D. Tex. Feb. 24, 2010); *Thomas v. Aetna Life Ins. Co.*, No. CIV.A.3:99-CV-1163-M, 2000 WL 1239129, at *2 (N.D. Tex. Aug. 31, 2000), *aff'd sub nom. Thomas v. Aetna Ins. Agency TX*, 273 F.3d 1101 (5th Cir. 2001); *Garin v. Aetna Health & Life Ins. Co.*, No. CIV.A.H-03-3294, 2005 WL 1840148, at *3-4 (S.D. Tex. Aug. 1, 2005); *Deleon v. US Airways, Inc.*, No. SA-11-CA-236-FB, 2012 WL 13136132, at *5-6 (W.D. Tex. Feb. 24, 2012), *adopted sub nom. by* 2012 WL 13136433 (W.D. Tex. Mar. 29, 2012). This

court likewise finds *Hall* persuasive and adopts its reasoning.

Here, Plaintiff sues Defendant under Sections 502(a)(1)(B) and 502(a)(3) to recover benefits allegedly due under the Texas Health Plan and the Patterson Auto Plan. (docs. 17 at 16; 21-2 at 2.) Defendant provided third-party claims administrative services for the plans when Revolution rendered the medical services at issue, but it stopped providing any administrative services for those plans after 2016. (doc. 21-6 at 2.) The undisputed evidence demonstrates that Defendant does not have access to the funds for payable benefit claims under those plans, and that it lacks the ability to pay out any benefits due under either plan, however. Because Defendant has no control or discretion concerning benefits under the Texas Health Plan and Patterson Auto Plan, Plaintiff lacks standing to pursue claims against it under Sections 502(a)(1)(B) and 502(a)(3) in connection with those plans. *See Hall*, 140 F.3d at 1196; *Franklin*, 2010 WL 669762, at *2 (following *Hall* in granting summary judgment in favor of former claims administrator of an ERISA plan because it was no longer in a position to pay claims even if they were covered); *Thomas*, 2000 WL 1239129, at *2 (same); *Garin*, 2005 WL 1840148, at *4 (same).

Plaintiff's claims under Sections 502(a)(1)(B) and 502(a)(3) based on the Texas Health Plan and the Patterson Auto Plan should be dismissed for lack of standing.[7]

---

[7]Even though Defendant's motion to dismiss broadly argues that Plaintiff fails to assert redressable claims for relief under ERISA, which appears to include Plaintiff's breach of fiduciary duty claim under Section 502(a)(2), its arguments focus solely on the claims under Sections 502(a)(1)(B) and 502(a)(3). (*See* doc. 20 at 17-18.) Because Defendant does not brief why Plaintiff cannot assert a redressable Section 502(a)(2) claim against a former plan administrator, that argument is waived. *See McKethan v. Texas Farm Bureau*, 996 F.2d 734, 739 n.9 (5th Cir. 1993) (failure to sufficiently brief issue constitutes waiver of issue); *see also Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

**2.    *Statutory Standing*[8]**

    i.    *Anti-Assignment Provision*

Defendant also argues that Plaintiff lacks standing to pursue ERISA claims relating to the Furniture Row Plan and the Texas Health Plan because both prohibit any assignment of benefits. (doc. 20 at 13-14.)  Plaintiff responds that Defendant waived enforcement of the anti-assignment provisions and is estopped from relying on them. (doc. 23 at 14.)

"It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 333-34 (5th Cir. 2005). It is also well established that "when an ERISA plan contains a valid anti-assignment provision, a putative assignment to a healthcare provider is invalid and cannot bestow the provider with standing to sue under the plan." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 251 (5th Cir. 2019) (citing *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 352-53 (5th Cir. 2002)). "Whether an

---

[8]The argument that a plaintiff lacks standing to assert a claim for benefits under ERISA implicates prudential or statutory standing, as it "challenges [the] plaintiff's ability to assert a claim under a particular statute, i.e., ERISA." *Mem'l Hermann Health Sys. v. Pennwell Corp. Med. & Vision Plan*, No. CV H-17-2364, 2017 WL 6561165, at *4 (S.D. Tex. Dec. 22, 2017). "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795, n. 2 (5th Cir. 2011).  Nevertheless, the Fifth Circuit has long held that "standing to bring an action founded on ERISA is a 'jurisdictional' matter," *Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir. 2006), and "is subject to challenge through Rule 12(b)(1)," *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016). *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351 (5th Cir. 2002) (finding ERISA standing "jurisdictional"); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 572 (5th Cir. 1992), *overruled in part on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (analyzing ERISA standing as a question of subject matter jurisdiction); *accord Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 262 (5th Cir. 2020) (explaining that third-party standing pursuant to an assignment of benefits under ERISA is "jurisdictional in nature").  Accordingly, Defendant's motion to dismiss the ERISA claims for lack of statutory standing is properly analyzed under Rule 12(b)(1). *See LeTourneau*, 298 F.3d at 353; *see, e.g., Mem'l Hermann Health Sys.*, 2017 WL 6561165, at *4 ("The court may therefore properly consider defendants' challenge to plaintiff's standing under Rule 12(b)(1).").

anti-assignment clause voids or invalidates an assignment of benefits depends on the court's application of 'universally recognized canons of contract interpretation to the plain wording of the ... anti-assignment clause' at issue." *Encompass Off. Sols., Inc. v. Connecticut Gen. Life Ins. Co.*, No. 3:11-CV-02487-L, 2017 WL 3268034, at *12 (N.D. Tex. July 31, 2017) (quoting *LeTourneau Lifelike*, 298 F.3d at 352). "In certain circumstances, however, the defendant may have waived or be estopped to assert the anti-assignment provision." *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. CIV.A. H-15-0297, 2015 WL 3756492, at *2 (S.D. Tex. June 16, 2015) (citing *Hermann Hosp. v. MEBA Med. and Benefits Plan*, 959 F.2d 569, 574-75 (5th Cir. 1992), *overruled on other grounds by Access Mediquip, LLC v. UnitedHealthcare Inc. Co.*, 698 F.3d 229 (5th Cir. 2012)).

Here, both the Furniture Row Plan and the Texas Health Plan include an "Assignment of Benefit" provision which states:

> No benefit under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge and any attempt to do so shall be void. No benefit under the Plan shall in any manner be liable for or subject to the debts, contracts, liabilities, engagements or torts of any person.

(docs. 21-3 at 5; 21-4 at 5.) This provision clearly and plainly bars the assignment of a beneficiary's legal rights to a third-party provider. *Dialysis Newco*, 938 F.3d at 255-56 ("[T]he plan's plain language, as it would be understood by an average plan participant, unambiguously prohibits the assignment of a beneficiary's legal rights."); *see, e.g., Windmill Wellness Ranch, L.L.C. v. Meritain Health, Inc.*, No. SA-20-CV-01388-XR, 2021 WL 2635845, at *3 (W.D. Tex. June 25, 2021) (finding the exact same language was "plain and clear in barring assignment").

Plaintiff argues that Defendant is estopped from asserting the anti-assignment provisions in the plans. (doc. 23 at 14.) "To establish an ERISA-estoppel claim, the plaintiff must establish: (1)

a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005) (citations omitted).

As to the first element, Plaintiff contends that Defendant engaged in intentional conduct that was inconsistent with the anti-assignment provision in the plans, asserting it for the first time after Plaintiff filed suit. (doc. 23 at 15.)  The first amended complaint alleges that Revolution received verification from Defendant that the medical procedures for which it asserts claims were covered by the plan and would be paid for in accordance with its terms, and Defendant failed to identify, assert, or rely upon any anti-assignment provision throughout the verification process. (doc. 17 at 8.) It also alleges that Defendant never referenced the anti-assignment provision when Revolution appealed the non-payment or underpayment of all claims through Defendant's appeals channel. (*Id.* at 9-10.)  While Plaintiff alleges that Defendant did not identify, reference, or rely on any anti-assignment provision during the verification process or appeal process, it does not allege that Defendant invoked the anti-assignment provisions to deny or underpay the *claims* under the plans. Nor does it allege that Defendant materially misrepresented its intention to challenge Plaintiff's jurisdictional standing to sue based on the anti-assignment provisions. *See Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 265 (5th Cir. 2020) (distinguishing between invoking an anti-assignment clause to deny a claim and invoking it to challenge jurisdiction).

Citing *Hermann Hosp. v. MEBA Med. and Benefits Plan* (*Hermann II*), 959 F.2d 569, 574 (5th Cir. 1992), *overruled on other grounds by Access Mediquip, LLC v. UnitedHealthcare Inc. Co.*, 698 F.3d 229 (5th Cir. 2012), Plaintiff contends that the Fifth Circuit "found an assignment valid despite an anti-assignment clause in the plan based upon the course of dealing between the plan and

the health care provider." In *Hermann II*, a hospital was told that a plan's insured, who had assigned her rights under ERISA to the hospital, was covered for the medical services it was providing. *Id.* The hospital repeatedly attempted to obtain payment for its services, but the plan postponed payment, stating only that it was investigating the claim. *Id.* Three years after the hospital's first payment request, the plan relied on the anti-assignment to deny the claim. *Id.* The court held that the plan was estopped from asserting the anti-assignment provision because of its "protracted failure to assert the clause when [the hospital] requested payment pursuant to a clear and unambiguous assignment of payments for covered benefits." *Id.* at 575. *Hermann II* is distinguishable because the anti-assignment provision was being asserted to ultimately deny the claim. *Id.* When, as here, a defendant is not invoking an anti-assignment provision to deny the claim but only as a challenge to a court's jurisdiction, there is no misrepresentation with respect to the defendant's intention to enforce the anti-assignment provision. *See Cell Sci. Sys.*, 804 F. App'x at 265.

As for the second and third elements of its ERISA-estoppel claim, because there are no allegations that Defendant materially misrepresented its intention to challenge Plaintiff's jurisdictional standing based on the anti-assignment provisions, Plaintiff cannot show reasonable and detrimental reliance. *See Windmill Wellness*, 2021 WL 2635845, at *4 ("Because Plaintiff did not assert its standing as an assignee until filing its Second Amended Complaint, Plaintiff did not detrimentally rely on an acquiescence by Defendants to its assertion of standing."). Finally, it does not provide any facts, arguments, or evidence demonstrating the existence of "extraordinary circumstances" in this case.[9] Because Plaintiff fails to allege facts sufficient to support any of the

---

[9]While the Fifth Circuit has not specifically defined the term "extraordinary circumstances," the court recognizes an approach that "generally defines extraordinary circumstances as those that involve bad faith, fraud, or concealment, as well as possibly when 'a plaintiff repeatedly and diligently inquired about benefits and was repeatedly mislead' or when 'misrepresentations were made to an especially vulnerable plaintiff.'" *Cell Sci. Sys.*, 804 F. App'x at

elements required for ERISA estoppel, Defendant should not be estopped from asserting the anti-assignment provisions in the Plans. *See Mello*, 431 F.3d at 444-45; *see, e.g., Windmill Wellness*, 2021 WL 2635845, at *4 ("Because Plaintiff does not meet any of elements required for ERISA estoppel, this Court declines to estop enforcement of the Plan's anti-assignment clause.").

Plaintiff alternatively argues that Defendant waived enforcement of the anti-assignment provisions. (doc. 23 at 13-14.) To prove waiver, the plaintiff must establish that the defendant voluntarily or intentionally relinquished a known right. *Pitts By & Through Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991) (citations omitted). Plaintiff fails to allege facts showing a voluntary or intentional surrender of the right to challenge jurisdiction under the anti-assignment provisions; it does not allege that Defendant "ha[s] ever recognized, acknowledged, or been aware of Plaintiff's assertion of its standing to sue as an assignee under ERISA prior to Plaintiff filing its [first amended complaint]." *Windmill Wellness*, 2021 WL 2635845, at *5.

Because the anti-assignment provisions in the Furniture Row Plan and the Texas Health Plan prohibit the assignment of plan benefits, Plaintiff lacks standing to assert claims under ERISA based on those plans. *See Dialysis Newco,* 938 F.3d at 251; *see, e.g., Sleep Lab at W. Houston v. Texas Children's Hosp.*, No. CIV.A. H-1S-01S1, 2015 WL 3507894, at *6 (S.D. Tex. June 2, 2015) ("Because the Plan attached to Plaintiff's Complaint contains an anti-assignment provision, and because the allegations of fact contained in Plaintiff's Complaint are not sufficient to establish that HCSC has waived or is estopped from relying on the Plan's anti-assignment provision due to the parties' course of conduct, Plaintiff's Complaint is subject to dismissal under Rule 12(b)(1) for failure to allege facts sufficient to establish standing.").

---

266 (citing *High v. E-Systems, Inc.*, 459 F.3d 573, 580 n.3 (5th Cir. 2006)).

Plaintiff's claims for ERISA benefits under the Furniture Row Plan and the Texas Health

Plan should be dismissed for lack of standing.

### ii.    Assignment of Fiduciary Claims

Defendant argues that Plaintiff lacks standing to assert breach of fiduciary duty claims under

Section 502(a)(2)[10] because they were not expressly assigned to Revolution. (doc. 20 at 14-17.)

In the Fifth Circuit, "a health care provider may possess standing under ERISA by virtue of

a valid assignment." *Dallas Cty. Hosp. Dist. v. Assocs. Health & Welfare Plan*, 293 F.3d 282, 285

(5th Cir. 2002). "In determining whether [a medical provider] obtained valid assignments, the court

interprets the assignments in accordance with Texas contract law principles and any ERISA plan

documents in accordance with ERISA principles." *Encompass*, 2017 WL 3268034, at *7; *see Harris

Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 334 (5th

Cir. 2005) ("[W]e interpret the assignment form in accordance with Texas contract law principles

and the [ERISA plan documents] under ERISA principles."). As a general rule, "an assignee takes

all of the rights of the assignor, no greater and no less." *F.D.I.C. v. McFarland*, 243 F.3d 876, 887

n.42 (5th Cir. 2001) (quoting *In re New Haven Projects Ltd. Liability Co. v. City of New Haven*, 225

F.3d 283, 290 n.4 (2d Cir. 2000)).

For a medical provider to obtain derivative standing to assert an ERISA breach of fiduciary

duty claim, the assignment must expressly and knowingly assign the claim to the provider. *See Tex.

Life, Acc. Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Ent. Co.*, 105 F.3d 210, 218 (5th Cir.

1997). "Assignments that do not refer specifically to fiduciary duty or other non-benefits ERISA

---

[10]Section 502(a)(2) of ERISA provides for a civil action "against fiduciaries for the restoration of any loss to a plan resulting from the breach of 'any of the responsibilities, obligations, or duties imposed upon fiduciaries by [§ 409(a)].'" *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 544 (5th Cir. 2016) (citing 29 U.S.C. §§ 1132(a)(2), 1109).

claims do not assign non-benefits claims to the plaintiff." *Grand Parkway*, 2015 WL 3756492, at

*3 (collecting cases). "[O]nly an express and knowing assignment of an ERISA fiduciary breach

claim is valid." *Gaylord*, 105 F.3d at 218.

Here, the AOBs executed by Insureds provide, in relevant part:

> **Signature below also consents to request Revolution Monitoring, LLC to submit all invoices associated with the professional services performed during my surgery to my designated insurer or health benefits plan, on my behalf. I consent to and request that my insurance company reimburse Revolution Monitoring, LLC directly for any invoices submitted on my behalf for professional services rendered by the above named company.** If for any reason my health benefits plan or insurance company does not reimburse Revolution Monitoring, LLC directly for services rendered on my behalf and reimburses me, I agree to send all payments by my insurer for IntraOperative Neurophysiologic Monitoring and all explanation of benefits to Revolution Monitoring immediately. Failure to remit such payment would make me legally responsible for the reimbursement of Revolution Monitoring, LLC the full amount of their professional fees, co-payments, co-insurance, or deductible amounts for which I am responsible, for delivery of IntraOperative Neurophysiologic Monitoring performed during my surgery. I am also aware that I am legally held responsible for the costs of the IntraOperative Neurophysiologic Monitoring services in my health benefits plan or insurance company fails or refuses to remit the costs for such services.
>
> **I authorize Revolution Monitoring, LLC and/or its attorneys to file any necessary claims, demands, or appeals with my insurer or health benefits plan from a denial of reimbursement or coverage for IntraOperative Neurophysiologic Monitoring services provided on my behalf. I also assign Revolution Monitoring, LLC my rights to bring legal action, if needed, against my insurer or health benefits plan to recover the costs of or enforce my rights to coverage of IntraOperative Neurophysiologic Monitoring services under my insurance or health benefits plan under applicable law, including without limitation under the Employee Retirement Income Security Act of 1974.**
>
> I understand that Revolution Monitoring, LLC may disclose personal health information (PHI) related to receipt of professional services for the purpose of enacting such as actions as defined above. I agree to provide the necessary information to and reasonably cooperate with and assist Revolution Monitoring to pursue third party payments of my claims for IntraOperative Neurophysiologic Monitoring services.

(doc. 23-1 at 3-6 (emphasis added).) This language unambiguously limits the assignment to recovery

of costs for IONM services rendered and to enforce the rights to coverage for such services under the plan.  "The assignment does not reference any ERISA breach of fiduciary duty claims or other non-benefits ERISA claims." *Texas Gen. Hosp., LP v. United Healthcare Servs., Inc.*, No. 3:15-CV-02096-M, 2016 WL 3541828, at *8 (N.D. Tex. June 28, 2016).

Because the AOBs are ineffective to assign any right to pursue ERISA breach of fiduciary duty claims, Plaintiff lacks standing to assert those claims in this lawsuit. *See Mid-Town Surgical*, 16 F. Supp.3d at 775 (concluding that an assignment referring only to payment of medical benefits with no mention of ERISA breach of fiduciary duty or other non-benefits ERISA claims was insufficient as a matter of law to assign those claims to the medical provider); *Encompass Off. Sols., Inc. v. Conn. Gen. Life Ins. Co.*, 2012 WL 3030376, at *6 (N.D. Tex. July 25, 2012) (holding that an assignment limited to recovery of "medical benefits allowable and otherwise payable" under the plan confers standing "to pursue claims for reimbursement of medical benefits but not other claims (regardless of whether the claims are characterized as fiduciary duty claims or otherwise)").

All of Plaintiff's breach of fiduciary duty claims under Section 502(a)(2) should be dismissed for lack of standing.

### III.  RULE 12(b)(6)

Under Rule 12(b)(6), Defendant moves to dismiss Plaintiff's state law claims as preempted under ERISA and for failure to state claim for relief. (doc. 20 at 21-26.)[11]

### A.    <u>Legal Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be

---

[11]Defendant also moves under Rule 12(b)(6) to dismiss Plaintiff's claims under Section 502(a)(3), Section 502(a)(2), and Section 502(a)(1)(B). (*See* doc. 20 at 19-21, 26-27.) Because all of those claims should be dismissed for lack of standing under Rule 12(b)(1), it is not necessary to consider Defendant's Rule 12(b)(6) arguments.

granted. Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings," a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a motion to dismiss include attachments to the complaint. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted); *accord Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). Accordingly, documents falling in these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

As discussed, Defendant provides the affidavit of its counsel, the declarations of its employees, and copies of the plan documents related to the claims. (*See* doc. 21.) Although some of these documents may be considered central to Plaintiff's claims, and therefore part of the pleadings, *see Collins*, 224 F.3d at 498-99, they have not been considered for purposes of the Rule 12(b)(6) motion. Conversion of the motion to dismiss into a motion for summary judgment is

22

therefore unnecessary. *See id.*; *Katrina Canal Beaches*, 495 F.3d at 205.

**B.      ERISA Preemption**

Defendant argues that ERISA preempts Plaintiff's state law claims for breach of contract and promissory estoppel. (doc. 20 at 21-23.)

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). To achieve this, Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.'" *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001).  "A state cause of action relates to an employee benefit plan whenever it has 'a connection with or reference to such plan.'" *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942, 945 (5th Cir. 1995) (citations omitted). "Under Fifth Circuit precedent, to determine whether a state law relates to a plan for purposes of ERISA preemption, the court asks '(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'" *McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 417 (5th Cir. 2008) (quoting *Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006)).

*1.      Breach of Contract*

Defendant contends that Plaintiff's breach of contract claim is preempted by ERISA because it "is based upon [its] alleged failure to pay out-of-network benefits in accordance with the terms of the Plans." (doc. 20 at 22.)

Plaintiff asserts a breach of contract action "as an assignee to recover benefits due under Texas state law." (doc. 17 at 22.) It alleges that Defendant "agreed to administer out-of-network benefits in accordance with the health benefit plans," that the benefits have been lawfully assigned to Revolution, and that "Defendant's failure to pay out-of-network benefits in accordance with the allowable amount within the health benefit plan breached the contractual agreements to administer health benefits to individuals." (*Id.* at 22-23.) For preemption purposes, this claim affects the relationship among the standard ERISA entities and clearly relates to an ERISA plan. *See Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir. 1990)). When, as here, a breach of contract claim "seeks to recover benefits owed under the plan to a plan participant who has assigned her right to benefits to the [medical provider]," the claim is preempted by ERISA. *Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Texas, Inc.*, 164 F.3d 952, 954 (5th Cir. 1999); *see, e.g., St. Luke's Episcopal Hosp. v. Louisiana Health Serv. & Indem. Co.*, No. CIV.A. H-08-1870, 2009 WL 47125, at *12 (S.D. Tex. Jan. 6, 2009) ("Because St. Luke's breach of contract theory is now premised on its contractual rights under the health insurance policy as an assignee, ERISA preempts the state-law breach of contract claim."); *see also Dorn v. Int'l Bhd. of Elec. Workers*, 211 F.3d 938, 948 (5th Cir. 2000) ("A state law claim . . . addressing the right to receive benefits under the terms of an ERISA plan necessarily 'relates to' an ERISA plan and is thus preempted.").

Plaintiff argues that its breach of contract claim is not preempted by ERISA because it "relates to Revolution's bankruptcy proceeding and its duty as assignee to recover amounts owed to Revolution to pay Revolution's creditors" and "does not directly affect the relationship among traditional ERISA entities." (doc. 23 at 21.) Even though Plaintiff brings this action on behalf of

the liquidating trustee of Revolution's estate, "[f]or purposes of ERISA preemption the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA." *Bank Of Louisiana v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 243 (5th Cir. 2006). "[T]he critical determination [is] whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated." *Id.* (quoting *Hobson v. Robinson*, 75 F. App'x 949, 955 (5th Cir. 2003). As discussed, Plaintiff's breach of contract claim is based on ERISA benefits that have been lawfully assigned to Revolution; it seeks payment for medical services rendered in accordance with the terms of the health benefit plans. Plaintiff fails to explain why ERISA does not preempt claims belonging to a bankruptcy estate, or to cite legal authority in support of its argument.

Because ERISA preempts Plaintiff's breach of contract claim, it should be dismissed.

### 2.    *Promissory Estoppel*

Defendant contends that Plaintiff's promissory estoppel claim is preempted because it is "based on the very terms of the Plans, as opposed to any promise made independently of the Plans." (doc. 20 at 23.)

As discussed, a state law claim "'relates to' an employee benefit plan and is preempted if it has a connection with or reference to the plan." *McAteer*, 514 F.3d at 417 (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). Plaintiff's first amended complaint asserts a promissory estoppel claim "on behalf of the Liquidating Trustee of Revolution's estate, separate and apart from any assignment of benefits." (doc. 17 at 23.) It alleges that "Revolution received verification by telephone from Defendant that each patient and the particular procedures were covered by a health

25

benefit plan" and it "would be paid a reasonable amount for the services rendered." (*Id.* at 23-24.)

Plaintiff's promissory estoppel claim is not dependent on or derivative of the rights of plan beneficiaries; the claim is brought on Revolution's own behalf for damages resulting from Defendant's representations regarding health care coverage and payment for services. *See Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 383 (5th Cir. 2011); *Mem'l Hosp. Sys.*, 904 F.2d at 250. While a medical provider's promissory estoppel claim that "depends on and derives from the rights of the plan participants and beneficiaries to recover benefits under an ERISA plan's terms" is preempted by ERISA, "ERISA does not preempt a third-party provider's state-law claims based on allegations that the defendants misrepresented that the beneficiary was covered by an ERISA plan when he or she was not." *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. CV H-16-549, 2017 WL 1231026, at *2 (S.D. Tex. Apr. 4, 2017) (citing *Access Mediquip*, 662 F.3d at 383); *see also Transitional Hosps. Corp.*, 164 F.3d at 954 ("ERISA does not preempt state law when the state-law claim is brought by an independent, third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health care coverage."). Even though its promissory estoppel claim is based on Defendant's representations that medical services were "covered by a health benefit plan," Plaintiff does not seek benefits from the plans, nor does it claim that Defendant wrongfully denied benefits due under the terms of the plans or that it improperly administered the plans. *See, e.g., Mid-Town Surgical*, 16 F. Supp.3d at 781 ("While MSC references the Humana Members' insurance plans in seeking recovery under its negligent misrepresentation and promissory estoppel claims, the essence of these claims, like in *Access Mediquip*, is that Humana represented that it would pay MSC a reasonable rate for the services provided. Accordingly, ERISA does not preempt MSC's promissory

26

estoppel and negligent misrepresentation claims."). Plaintiff's promissory estoppel claim "is thus independent of the plan's actual obligations under the terms of the insurance policy and in no way seeks to modify those obligations." *Mem'l Hosp. Sys.*, 904 F.2d at 250.

Because Plaintiff's promissory estoppel claim is not preempted under ERISA, Defendant's motion to dismiss the claim on preemption grounds should be denied.

## C.   <u>Failure to State a Claim</u>

Defendant argues that Plaintiff fails to state a claim for promissory estoppel. (doc. 8 at 6.)

Although normally a defensive theory, promissory estoppel is also available as a cause of action to a promisee who has reasonably relied to his detriment on an otherwise unenforceable promise. *See Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 761 (N.D. Tex. 2012); *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 769 (Tex.App.–El Paso 2004, no pet.). To establish a claim for promissory estoppel, a plaintiff must show: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014) (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). "Vague and indefinite statements that amount to no more than speculation about future events...are insufficient to support a claim for promissory estoppel." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 654 F. Supp. 2d 536, 544 (N.D. Tex. 2009), *aff'd by* 632 F.3d 148 (5th Cir. 2010).

Here, Plaintiff alleges that before Revolution provided medical services to Insureds, Defendant verified that each patient and the particular procedures were covered by a health benefit plan and that it would be paid a reasonable amount for the services rendered. (doc. 17 at 23-24.) It also alleges that Revolution substantially and reasonably relied to its detriment on the promises

made by Defendant, that Revolution would not have provided services without such promises, and that Defendant knew or should have known that Revolution would rely upon the promises. (*Id.* at 24.)  These facts are sufficient to state a claim for promissory estoppel that is plausible on its face. "Plaintiff alleges a promise, foreseeability of reliance by Defendant[ ], Plaintiff's reliance on Defendant['s] promises, and that reliance was to Plaintiff's detriment." *Rapid Tox Screen LLC v. Cigna Healthcare of Texas Inc.*, No. 3:15-CV-3632-B, 2017 WL 3658841, at *15 (N.D. Tex. Aug. 24, 2017); *see also Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Texas, Inc.*, No. CIV.A. H-11-2086, 2012 WL 1252512, at *2 (S.D. Tex. Apr. 11, 2012) ("The pleadings establish acts taken by plaintiff in reliance upon defendant's verbal agreement to pay for medical procedures for certain patients."). "Numerous courts confronted with similar allegations have found a complaint adequate to state a claim for promissory estoppel." *Texas Gen. Hosp.*, 2016 WL 3541828, at *12 (collecting cases); *see, e.g., Mid-Town Surgical*, 16 F. Supp.3d at 782 (concluding that plaintiff adequately pleaded facts sufficient to state a promissory estoppel claim by alleging that the insurer had "made promises to [healthcare provider] itself ... prior to the services being performed or provided by [healthcare provider] that [it] would make payment for services . . . pursuant to each insured/member's benefits plan"); *but see Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp.2d 587, 604 (N.D. Tex. 2014) (dismissing promissory estoppel in a pleading that contained "limited factual allegations regarding the promises made" but did not "allege sufficient facts regarding the remaining elements to raise their right to relief above the speculative level).

Defendant also argues that Plaintiff's promissory estoppel claim fails under the express contract rule. (doc. 20 at 25.) Under Texas law, "[t]he doctrine of promissory-estoppel applies only

where no contract on the subject matter exists." *City of Clinton*, 654 F. Supp.2d at 544 (citing *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002)). Generally speaking, "[i]f . . . a valid contract between the parties covers the alleged promise, the plaintiff cannot recover for the promise under promissory estoppel." *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015) (quoting *Fertic v. Spencer*, 247 S.W.3d 242, 250 (Tex. App.—El Paso 2007, pet. denied)). "Instead, the wronged party must seek damages under the contract." *El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.*, 939 S.W.2d 695, 699 (Tex. App.—El Paso 1997, writ denied) (citation omitted). Although promissory estoppel is not applicable when there is a legally valid contract between the parties, the first amended complaint plainly asserts that Plaintiff's promissory estoppel claim is "separate and apart from any assignment of benefits" and concern promises Defendant allegedly made to Revolution regarding coverage under each patient's health benefit plan. (*See* doc. 17 at 23). "[T]hese allegations state a plausible claim for promissory estoppel separate and apart from any claim that plan members would have had based on a failure to pay under the contract." *Gilmour for Grantor Trusts of Victory Parent Co., LLC v. Aetna Health, Inc.*, No. SA-17-CV-00510-FB, 2018 WL 1887296, at *16 (W.D. Tex. Jan. 19, 2018).

Because Plaintiff's allegations are sufficient to support a claim of promissory estoppel, Defendant's motion to deny this claim should be denied.

## IV.  RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED in part** and **DENIED in part**, and Plaintiff's ERISA claims under Sections 502(a)(1)(B), 502(a)(2), and 502(a)(3) and breach of contract claims should be **DISMISSED with prejudice**. Plaintiff should be allowed to proceed on its promissory estoppel claims.

**SO RECOMMENDED** on this 12th day of November, 2021.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE